UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER Q. PETTEWAY, Plaintiff, | | |
| -against- | | 3:26-cv-919 (SFR) |
| DANIEL DOUGHERTY, et al., Defendants. | | |

**INITIAL REVIEW ORDER**

Plaintiff Christopher Petteway is serving a sentence in the custody of the Connecticut Department of Correction ("DOC").[1] He commenced this action by filing his Complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 while housed at Corrigan-Radgowski Correctional Center ("Corrigan"). Compl., ECF No. 1. Petteway names as defendants the following fourteen Department of Correction ("DOC") employees who all work at Corrigan: Correctional Officer David Say, Lieutenant Hacket, Warden Perez, Former Warden Daniel Dougherty, Dr. Brone, Dr. Rayder, Lieutenant Fulton, Counselor Supervisor Larissa Kelly, Counselor Supervisor Kerwin, Correctional Officer Aponte, Lieutenant Pearsons,[2] Lieutenant

[1] I take judicial notice of information on the publicly available DOC website showing that Petteway was sentenced on June 20, 2023, and that he is presently housed at Corrigan-Radgowski Correctional Center. See https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=426345 (last visited October 24, 2026). See, e.g., Kelley v. Quiros, No. 3:22-cv-1425 (KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

[2] Petteway refers to this defendant as both Pearsons and Pearson. I will refer to this defendant as Pearsons consistent with the case caption.

Thibodeau, Correctional Officer Mawr-Edmunds, and Psychiatrist Dr. Garnea.[3] He sues all defendants in their individual and official capacities.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, I must dismiss the Complaint, or any portion of the Complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

I have thoroughly reviewed all factual allegations in Complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A. I now consider whether Petteway has alleged any plausible claims for damages against the defendants for violation of his rights under the United States Constitution.

## I. BACKGROUND

Without setting forth all of the facts alleged in Petteway's Complaint, I summarize Petteway's basic factual allegations here to give context to my rulings below.

On March 5, 2026, Petteway was transferred from Cheshire Correctional Institution to Corrigan. Compl. ¶¶ 1, 4. At that time, Daniel Dougherty was the Corrigan Warden and Brian Perez was the Deputy Warden. *Id.* ¶ 117.

---

[3] Under Rule 10(a) of the Federal Rules of Civil Procedure, a complaint must include the names of all parties in the case caption. *See* Fed. R. Civ. P. 10(a) ("title of the complaint must name all the parties"). Accordingly, I consider only claims against the individuals named as defendants in the case caption of Plaintiff's complaint.

Prior to his transfer to Corrigan, Petteway had been afforded single-cell status since March 3, 2023. *Id.* 9, ¶ 2.

When he was admitted to Corrigan, Petteway spoke to Corrigan custody and mental health staff about his single-cell status at other facilities and explained he would have difficulty without a single cell at Corrigan for several reasons. *Id.* ¶¶ 7-12. He indicated that he was attacked by another inmate in a recreation cage even after he had single-cell status in July 2023; that he suffers from PTSD due to being a survivor of sexual abuse and an automobile accident; has to stretch and engage in exercise for back pain; experiences acid reflux; retains a high volume of legal materials that take up a lot of cell space; and stays up at all hours of night and rises early. *Id.* ¶¶ 13-17.

From March 5 to March 8, 2026, Corrigan staff housed Petteway in a single cell without electricity in the A Unit (which generally houses unsentenced individuals). *Id.* ¶ 18. Petteway was later moved to the H Unit in cell 225. *Id.*

Petteway's PTSD was triggered after Lieutenant Hacket attempted to house him with a cellmate. *Id.* As a result, Petteway refused to be housed with the "high security" cellmate and was sent to the Restrictive Housing Unit ("RHU"), where prison officials again attempted to force him into a cell with a cellmate. *Id.* ¶ 19. After Petteway pushed away from the "forced entry," a correctional officer (not named as a defendant to this action) "bashed Petteway into the exterior walls of the cell." *Id.* Petteway was then moved to a different cell without a cellmate. *Id.* ¶ 21.

On March 10, 2026, Petteway spoke to Warden Dougherty and Deputy Warden Perez about the grievance he filed in March 2023 while housed at MacDougall-Walker Correctional Institution ("MWCI") concerning his need for single-cell status. *Id.* ¶ 118. After Warden

Dougherty—who was then MWCI Warden—upheld the grievance, Petteway was afforded single-cell status at all DOC institutions (excepting Corrigan after his transfer in 2026), although DOC prison officials had refused to make his status official. *Id.* ¶¶ 3-5. After Petteway spoke to Dougherty and Perez at Corrigan, they refused to afford him single-cell status. *Id.* ¶ 118.

A few days later, another inmate advised Petteway that Lieutenant Fulton had stated that Petteway would have a cellmate because he did not have single-cell status. *Id.* ¶ 22. Petteway was later told that he had one week to choose a cellmate. *Id.* ¶ 23. Instead, Lieutenant Fulton determined Petteway should be housed with an individual who had a history of committing sexual abuse. *Id.* ¶ 24. Although Petteway and his cellmate got along, there were problems with the cellmate that triggered Petteway's PTSD. *See id.* ¶¶ 25-26.

Lieutenant Fulton moved the cellmate to another cell and moved another individual into Petteway's cell. *Id.* ¶¶ 27-28. Petteway felt stress about being housed with the new cellmate, who was known for making liquor in the cell. *Id.* ¶¶ 29-30. At times, Petteway had difficulty breathing when the cellmate sealed off the door of the cell while he processed liquor. *Id.* ¶ 32. Petteway and the cellmate almost engaged in a fist fight due to disagreements. *Id.* ¶ 33. Petteway advised correctional officials about his problems with his cellmate. *Id.*

On May 6, 2026, Petteway mailed copies of his 2023 grievance to Warden Perez (who had then succeeded Dougherty as Corrigan Warden). *Id.* ¶¶ 119-20.

At 3:10 AM on May 27, 2026, Captain Gooley (who is not a named defendant) took Petteway to the RHU because there was a sheet cover "border[ing]" his bunk. *Id.* ¶ 35. Prior to being sent to the RHU, Petteway's cellmate offered him a drink of alcohol to calm him down when he experienced frustration and symptoms from PTSD. *Id.* ¶ 36.

Petteway was put on Behavior Observation Status ("BOS") after he refused to answer medically-related questions. *Id.* ¶ 37. Petteway was forced to strip down and put on a safety gown with a safety blanket. *Id.* ¶ 38.

The next day, Dr. Ganea advised Petteway he would be taken off BOS status. *Id.* ¶ 39. Petteway responded that he was tired of being sent to BOS for nothing and having his classification raised. *Id.* ¶ 40. He stated that he would not return the safety gown to staff. *Id.*

Petteway was later served with a disciplinary report for refusing to return the safety gown. *Id.* ¶ 41. He eventually relinquished the safety gown and blanket so that he could be moved to Administrative Segregation status. *Id.*

On May 28, 2026, several prison officials—lieutenants, captains, counselor supervisors, and medical staff—arrived at Petteway's cell to inform him that he would be moved to another "high security" cell with another "high security" cellmate. *Id.* ¶ 42. This information triggered Petteway's PTSD to such an extent that he had suicidal ideations that he had not had for six years. *Id.* ¶¶ 42-46. Petteway advised Dr. Garnea of his ideations caused by the stress of being placed in imminent danger. *Id.* ¶ 45. Dr. Garnea instructed staff to proceed with the plan to house Petteway with a cellmate. *Id.* ¶ 47.

Petteway refused to enter the cell when prison officials attempted to house him with a cellmate. *Id.* ¶ 49. Prison officials ultimately put Petteway in the neighboring cell that was empty. *Id.* ¶ 50. Petteway continued to suffer from PTSD due to the past and continuing abuses. *Id.* ¶ 51. Due to anxiety, frustration and desperation, Petteway attempted suicide by tying up a sheet in the cell. *Id.* ¶ 54. Prison officials rushed in and untied the knot around his neck. *Id.* ¶ 55. During Petteway's transportation to the hospital, Correctional Officer Mawr-Edmunds and another officer caused ankle and wrist restraints to dig into Petteway's pre-existing injuries.

*Id.* ¶ 56. Petteway yelled out due to the extreme pain. *Id.* Petteway advised the hospital and emergency medical staff that he was being abused and requested that the media be notified. *Id.* ¶¶ 58, 61.

The hospital doctor advised that Dr. Garnea had notified him of Petteway's expressed suicidal ideation. *Id.* ¶ 60. Petteway requested that the media be notified, but the doctor indicated that he did not have any authority to do so. *Id.* ¶ 61. He stated that Petteway would see a victim advocate, but this did not occur before Petteway was returned to the Corrigan hospital unit and placed on a suicide watch. *Id.*

After being cleared by medical staff, Petteway was again placed in a cell with a cellmate. *Id.* ¶ 61. On June 1, 2026, Petteway positioned a sheet to obstruct the view into the cell. *Id.* ¶ 67. Officer Say rushed into Petteway's cell; yelled and screamed at Petteway; beat Petteway with his fist in the torso, face and head, and eye; and sprayed Petteway in the face and eye with chemical agent *Id.* ¶¶ 67-68, 70. Petteway covered himself with the sheet as he is very allergic to the toxic spray, *id.* ¶ 69, but Officer Say's beating caused him to lose consciousness, bleed, lose sight in his right eye, and become disoriented and suffer memory loss. *Id.* ¶ 71.

Petteway was transferred to the RHU in-patient medical unit, where Dr. Rayder conducted minor surgery to seal Petteway's right eye. *Id.* ¶ 72. Dr. Rayder did not take any pictures of Petteway's injuries and refused to send Petteway to the hospital for diagnostic tests, such as an MRI or CT-Scan. *Id.* ¶ 74. At that time, Petteway had not been afforded proper, timely chemical agent decontamination. *Id.* ¶ 73

Medical staff advised Petteway to continue to take his pain relief medication (Tylenol and ibuprofen) as needed, although Petteway complained of stomach issues, the potential for liver problems, and asked for alternatives to the pain relief pills. *Id.* ¶ 75.

Dr. Garnea later prescribed Petteway with Thorazine pills without a formal evaluation and without permitting Petteway the right to reject such medication consistent with the Patient Bill of Rights. *Id.* ¶ 76. Petteway is allergic to Thorazine, which has caused him to suffer from several different medical conditions. *Id.* ¶ 77. Prior to the Thorazine prescription, Petteway had been off of psychiatric medications since November 2021 while he was under the care of a different psychiatrist at Garner Correctional Institution. *Id.* ¶ 77. Dr. Garnea later removed Petteway's Thorazine prescription on June 3, 2026. *Id.* ¶ 79.

On June 1, 2026, Petteway met with Lieutenant Thibodeau, Dr. Garnea, Correctional Officer Aponte, and Dr. Rayder. *Id.* ¶¶ 62, 64. Officer Aponte advised Petteway that he had received five disciplinary reports since May 27, 2026. *Id.* ¶ 63. Aponte explained that Petteway would be found guilty of all the charges but would not receive sanctions or restrictions. *Id.* Aponte represented that he would restore Petteway's telephone service and permit him to make telephone calls that same day; place him a cell without a cellmate; put him on a "Chronic Classification Status;" and provide him with a new inmate tablet. *Id.* ¶ 64. Petteway did not plead guilty and was not provided with a formal hearing in compliance with constitutional due process. *Id.* ¶ 65.

On June 1, 2026, Petteway made his first telephone call since March 6, 2026. *Id.* ¶ 80. At that time, he learned that his older brother had suffered a severe automobile accident. *Id.* ¶ 81. Petteway had previously only been able to make two to four telephone calls a month to courts through the DOC Office telephone calls. *Id.* ¶ 82. Petteway maintains that he has been

deprived of ongoing deprivation of his access to the courts. *Id.* ¶¶ 82-83. Petteway made requests for additional legal calls for his civil and post-conviction matters without success. *Id.* ¶ 86.

On June 3, 2026, Lieutenant Thibodeau and Officer Aponte advised Petteway that his Chronic classification commenced on June 2, 2026, and continued up to the pending Chronic Classification review hearing with Counselor Supervisors Kelly and Kerwin. *Id.* ¶ 84. Petteway expressed his concern about arbitrary and capricious abuse of discretion under Administrative Directive 9.5, Code of Penal Discipline and the Inmate Disciplinary Hearing Process and Procedure. *Id.* ¶ 85.

On June 4, 2026, Petteway received sanctions and restrictions for all the disciplinary charges issued between May and June 1, 2026, contrary to Officer Aponte's representation. *Id.* ¶ 91. Petteway's punitive segregation was set to end on June 2, 2026, but he continued to be held on an arbitrary RHU "Limbo" status pending a review for his increased security classification to Chronic status. *Id.* ¶ 92.

In the RHU, Petteway was subjected to restrictive conditions, including three showers per week; limited recreation opportunities; no access to a tablet, rehabilitation programs or religious services; no ability to shave or have his hair cut; and no access to news media or personal property. *Id.* ¶¶ 93-97. Petteway was denied access to any medical braces, bands, supports, and a wedge pillow. *Id.* ¶ 99.

Prison officials have refused to afford Petteway immediate access to his legal or religious property until June 4, 2026, the day of Petteway's court hearing for his case against the DOC Commissioner at the Connecticut Superior Court at Tolland. *Id.* ¶ 87. At that time, Lieutenants Thibodeau, Lieutenant Pearsons, and Officer Aponte permitted Petteway only a

half box of his legal property, even though Petteway had explained he required access to one and half boxes of legal materials to litigate his pending court action with more fifteen to twenty motions. *Id.* ¶¶ 88-89. Petteway maintains Thibodeau, Pearsons, and Aponte refused to retrieve Petteway's necessary litigation materials based on arbitrary and capricious rules and regulations. *Id.* ¶ 90.

When Petteway attempted to access his legal property in the Admitting and Processing Room, six or eight correctional officers harassed him "incessantly" and would not allow him to focus on selecting half a box of legal property. *Id.* ¶ 100. As a result Petteway became overwhelmed and frustrated and started to perspire due to his PTSD. *Id.* ¶ 101. He requested to return to the RHU without retrieving any legal materials so that he could regain his peace of mind. *Id.*

DOC officials later used a machine to check Petteway's legal documents to determine if he was attempting to smuggle in "K2" into the prison.[4] *Id.* ¶¶ 102-03. During the process, the officer running Petteway's materials through the machine allowed the documents to become disorganized despite Petteway's request for the officer to keep the documents in the correct order. *Id.* ¶ 102-06. The office also tore "sentimental" pages of out of Petteway's Bible. *Id.* Another officer walked away to make copies of several of Petteway's documents because he claimed to have identified an "anomaly." *Id.* ¶¶ 107-08. After he returned to the RHU, Petteway discovered that he did not have a complete set of his original documents. *Id.* ¶ 108.

[4] The federal Drug Enforcement Administration describes K2 as a synthetic designer drug "intended to mimic THC, the main psychoactive ingredient of marijuana." *See* https://www.dea.gov/factsheets/spice-k2-synthetic-marijuana.

Lieutenants Pearsons and Thibodeau and other correction officials conversed with Petteway about sexual issues and other inappropriate subjects. *Id.* ¶ 109. Lieutenant Pearsons also bragged about his salary and the praise he had received for denying Petteway his single-cell status and forcing him into high-risk living situations. *Id.* ¶ 110. He then advised Petteway he was released from RHU and would return to the A Unit for placement with a cellmate. *Id.* ¶¶ 111-12.

## II. **LEGAL STANDARD**

Under 28 U.S.C. § 1915A, courts must review prisoner civil complaints in which a prisoner seeks redress from a governmental entity and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the court must "draw all reasonable inferences in [a plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98,

104 (2d Cir. 2011) (citation modified). However, the court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.* (citation modified), and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam)). However, *pro se* litigants are still required to comply with Rule 8 of the Federal Rules of Civil Procedure. *See, e.g.*, *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike."). Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original). A statement of claim that is not short and direct places "an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Harden v. Doe*, No. 19-CV-3839 (CM), 2019 WL 2578157, at *2 (S.D.N.Y. June 24, 2019) (citation modified).

## III. <u>DISCUSSION</u>

I read Petteway's Complaint to advance claims under 42 U.S.C. § 1983 primarily arising from prison staff's refusal to afford him a single cell at Corrigan.

Section 1983 of Title 42 provides that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation

of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (citation modified). This is true with respect to supervisory officials as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (stating that a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability" in order to hold a state official liable for damages under § 1983 and "it is not enough for [a plaintiff] to show that [a defendant] was negligent, or even grossly negligent, in her supervision of the correctional officers or in failing to act on the information she had"). Thus, "[a] complaint that lumps all the defendants together by means of a sweepingly general allegation of wrongdoing does not plausibly allege a claim for relief against any one defendant and denies each individual defendant fair notice of what the plaintiff alleges that the individual defendant did wrong." *Alejandro v. Quiros*, No. 3:21-CV-00542 (JAM), 2021 WL 5324905, at *5 (D. Conn. Nov. 16, 2021). Absent allegations particularized to specific persons in terms of what that defendant

was told and how he or she responded, a complaint does not allege facts to plausibly establish that their actions or inaction violated a plaintiff's constitutional rights. *Id.*

**A. Eighth Amendment Deliberate Indifference**

The Eighth Amendment to the U.S. Constitution prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. A plaintiff may assert claims against prison officials based on unsafe conditions of confinement and deprivation of medical care, including mental health care. *See Suarez v. Morton*, No. 24-872, 2026 WL 741169, at *11 (2d Cir. Mar. 17, 2026); *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013).

To demonstrate an Eighth Amendment violation, a plaintiff must satisfy both an objective and subjective element. *See McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999). With respect to the first element, the plaintiff's claim must satisfy that "the alleged punishment [was] 'objectively, sufficiently serious.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

As for the second element, the subjective prong, the plaintiff must allege facts to show the prison official defendant acted with a "sufficiently culpable state of mind" of "deliberate indifference" to the prisoner's health and safety and/or medical needs. *Farmer*, 511 U.S. at 834. The plaintiff must allege facts to suggest that the defendants acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness. In other words, a plaintiff must allege that a defendant was aware of a substantial risk that he would be seriously harmed if that defendant did not act. *See, e.g.*, *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012) (*per curiam*); *Collazo*, 656 F.3d at 135. But "[o]fficials need only be aware of the risk

of harm, not intend harm. And awareness may be proven from the very fact that the risk was obvious." *Spavone*, 719 F.3d at 138 (citation modified).

I note the Eighth Amendment does not guarantee a prisoner the right upon request to be housed in a single cell. *See Germano v. Cook*, No. 3:19-cv-01204 (JAM), 2020 WL 264763 at *11 (D. Conn. 2020) (citing cases). But construing the allegations to make the strongest arguments they suggest, I consider whether Petteway has alleged a plausible claim of Eighth Amendment violation resulting from any defendants' deliberate indifference to his mental health need for a single cell.

Relevant to the objective element, Petteway's allegations are sufficient to support an inference he suffers from serious mental health condition and is at substantial risk of harm if housed with a cellmate. *See Thompson v. Quiros*, No. 3:21-CV-00262 (JAM), 2021 WL 5301240, at *4 (D. Conn. Nov. 15, 2021) (determining, for claim of Eighth Amendment deliberate indifference to plaintiff mental and physical health need for single cell, that allegations of PTSD, sleep deprivation, as well as "constant" stress, pain were sufficient to satisfy the objective element for purposes of initial review); *see also Young v. Choinski,* 15 F. Supp. 3d 194, 199 (D. Conn. 2014) (noting that "[i]n the context of mental health needs, propensities to attempt suicide, harm oneself, and/or exhibit severe depression or anxiety attacks have been viewed as 'sufficiently serious'").

As for the subjective requirement, I must review the Complaint to determine whether Petteway's alleged facts support an inference that any defendant denied Petteway a single cell while aware that housing him with a cellmate would expose him to a serious risk of harm. I conclude Petteway's allegations suggest Defendants Warden Dougherty, Deputy

Warden/Warden Perez, Lieutenants Hacket, Lieutenant Fulton, and Dr. Garnea were all involved with his deprivation of a single cell.[5]

**1. Lieutenant Hacket**

Petteway alleges that Lieutenant Hacket "attempted" to place him in a cell with a cellmate but Petteway refused housing. Compl. ¶ 18. Petteway's allegations do not suggest Lieutenant Hacket had any prior knowledge that Petteway's placement with a cellmate exposed him to serious mental health harm. Nor is there any indication that Hacket was aware Petteway had been afforded a single cell at other DOC facilities. Accordingly, I do not see any allegations to suggest Lieutenant Hacket acted with deliberate indifference to Petteway's serious mental health needs for a single cell. Thus, I dismiss Petteway's Eighth Amendment claim against Lieutenant Hacket as not plausible.

**2. Warden Dougherty and Deputy Warden/Warden Perez**

Petteway's allegations indicate Warden Dougherty and Deputy Warden/Warden Perez were aware that he was previously determined to warrant housing in a single cell, but they nonetheless failed to provide him with single cell after his transfer at Corrigan. Compl. ¶¶ 3-5, 118-120. For initial pleading purposes, I construe Petteway's allegations most favorably to support an inference that Dougherty and Perez acted with conscious disregard to Petteway's mental health needs for a single cell. Accordingly, Petteway may proceed on his Eighth

[5] Petteway alleges that Lieutenant Pearsons bragged about being praised for denying Petteway single-cell status and threatened to return him to a cell with a cellmate. Compl. ¶ 110. But Petteway's allegations do not suggest that Lieutenant Pearsons acted to deny him a single cell or placed him in a cell with a cellmate. Accordingly, I do not discern allegations showing that Lieutenant Pearsons had any direct personal involvement in an Eighth Amendment violation based on deliberate indifference to Plaintiff's mental health with respect to the single cell.

Amendment deliberate indifference claims against Defendants Dougherty and Perez in their individual capacities.

**3. Lieutenant Fulton**

For purposes of initial review, I read Petteway's allegations most favorably to suggest that Lieutenant Fulton was aware of Petteway's mental health needs for a single cell but placed him in a cell with an individual who had a history of sexual abuse and another individual who was known to make liquor in the cell. *See* Compl. ¶¶ 22-27.

At this initial stage, I conclude Petteway's allegations suggest Lieutenant Fulton acted with deliberate indifference to Petteway's mental health needs for a single cell. Thus, I permit Petteway to proceed for damages on an Eighth Amendment claim against Lieutenant Fulton for further development of the record.

**4. Dr. Garnea**

Petteway alleges that Dr. Garnea instructed prison staff to house him with a cellmate, although he was aware of Petteway's mental health concerns. Compl. ¶¶ 45-47. I conclude Petteway has sufficiently alleged that Dr. Garnea acted with conscious disregard of Petteway's mental health needs to be housed in a single cell. Thus, I permit Petteway to proceed on his Eighth Amendment deliberate indifference claim against Dr. Garnea in his individual capacity.

**B. Misjoinder Under Federal Rule of Civil Procedure 20**

Petteway's Complaint raises additional constitutional violations that are not directly related to his complaint about his mental health need for a single cell. Thus, I consider whether Petteway has properly joined all of the claims against the defendants named in this action under Federal Rule of Civil Procedure 20.

The Federal Rules of Civil Procedure authorize a plaintiff to "join . . . as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). But where, as here, a plaintiff asserts claims against multiple defendants, joinder is appropriate only where the complaint asserts relief "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)-(B).

"Rule 21 provides that a court 'may sever any claim against a party.'" *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 263 (D. Conn. 2012). In resolving whether a claim should be severed for misjoinder, "[c]ourts consider whether: (1) the claims arise out of the same transaction or occurrence; (2) the claims present some common question of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) prejudice would be avoided; and (5) different witnesses and documentary proof are required for the separate claims." *Id*. "The decision whether to sever a claim 'is committed to the sound discretion of the trial court.'" *Id*. (quoting *Greystone Cmty. Reinv. Ass'n v. Berean Capital, Inc.*, 638 F. Supp. 2d 278, 293 (D. Conn. 2009)).

In addition to the Eighth Amendment claims arising from deliberate indifference to Petteway's mental health need for a single cell, the Complaint raises concerns about Eighth Amendment violations arising from the use of excessive force, indifference to his pain from the use of restraints, his RHU confinement and restrictive condition, verbal and sexual harassment, and delayed and inadequate medical treatment; Fourteenth Amendment due process violations related to his prison disciplinary charges, classification, and property loss; and deprivations of his constitutional right to access to the courts and legal counsel. But Petteway's predominate claim of Eighth Amendment deliberate indifference to his mental

health need for a single cell and these additional constitutional claims "arise from different circumstances and would require separate analyses," *see Costello*, 888 F. Supp. 2d at 264, and are not "so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978). I do not see a "'substantial' overlap in questions of law or fact across the claims," *Ardolf v. Weber*, 332 F.R.D. 467, 479 (S.D.N.Y. 2019), such that the claims involve a "question of law or fact common to all defendants," Fed. R. Civ. P. 20(a)(2). Thus, I conclude judicial economy will not be facilitated by retaining all of Petteway's claims in a single action as discovery and trial would be lengthy and burdensome due to the necessity for several different sets of evidence and separate proofs. Likewise, any settlement would be hindered by the multiple claims against several different parties. Thus, I permit Petteway to proceed on Eighth Amendment claims of deliberate indifference to his mental health needs for a single cell, but I sever and dismiss the remainder of his allegations and claims pursuant to Rule 21. *See Jordan v. Dep't of Corr.*, No. 3:24-CV-227 (VAB), 2024 WL 5112001, at *2 (D. Conn. Dec. 13, 2024) (severing and dismissing misjoined claims while permitting properly joined claims to proceed).

**C. Official Capacity Relief**

Petteway has sued each defendant in their official capacity. Compl. 5. Petteway's Complaint specifies only that he seeks injunctive relief with a temporary restraining order or preliminary injunction. *Id.* at 2.

In any event, Petteway cannot pursue claims for money damages against the defendants, who are state employees, in their official capacities. Such claims are barred by

the Eleventh Amendment and must be dismissed. *See, e.g. Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

A plaintiff may seek injunctive relief against a state official only to the extent that he alleges an ongoing violation of the constitutional rights for which a federal court may enter an order of prospective relief against that official in his official capacity. *See, e.g.*, *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *Silva v. Farrish*, 47 F.4th 78, 84 (2d Cir. 2022).

Petteway has filed a motion for preliminary injunction. Mot. for Prelim. Inj., ECF No. 27. Thus, I consider whether Petteway's motion seeks any plausible preliminary injunctive relief.

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (Sotomayor, J.). It is "a temporary measure intended to furnish provisional protection while awaiting a final ruling on the merits." *Ramos v. Town of Vernon*, 208 F.3d 203 (2d Cir. 2000). A district court has wide discretion in determining whether to grant preliminary injunctive relief. *See Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506, 511 (2d Cir. 2005) (Sotomayor, J.).

"In the Second Circuit, the same legal standard governs motions for temporary restraining orders and motions for preliminary injunctions." *Lazor v. Univ. of Connecticut*, 560 F. Supp. 3d 674, 677 (D. Conn. 2021). "That familiar standard requires a plaintiff to make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that

an injunction is in the public interest.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

"[T]he moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." *Vega v. Lantz*, No. 3:04-CV-1215 (DFM), 2006 WL 2642416, at *2 (D. Conn. Sept. 14, 2006) (citation modified); *see also Taylor v. Rowland*, No. 3:02-CV-229 (DJS) (TPS), 2004 WL 231453, at *2–*3 (D. Conn. Feb. 2, 2004) (concluding that a motion for preliminary injunctive relief was not proper because it was "unrelated to the issues in the amended complaint"). And, "[i]n the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846-47 (1994)) (citation modified). Federal courts can order prospective relief "in any civil action with respect to prison conditions," provided it "extend[s] no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a). Thus, injunctive relief afforded by a court must be narrowly tailored or proportional to the scope of the violation and extending no further than necessary to remedy the violation. *Brown v. Plata*, 563 U.S. 493, 531 (2011). Thus, the court should reject "remedial orders that unnecessarily reach out to improve prison conditions other than those that violate the Constitution." *Id.*

I have determined that Petteway may proceed in this action on Eighth Amendment claims arising from indifference to his mental health need for a single cell while housed at Corrigan. Petteway's motion for preliminary injunctions includes 47 requests for separate injunctive orders, but only one request seeks relief related to his alleged denial of his single cell. Petteway cannot proceed on any requests for injunctive relief that "deal[] with a matter

lying wholly outside the issues in the suit." *De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945); *accord Al-Bukhari v. Dep't of Correction*, 720 F. App'x 655, 656 (2d Cir. 2018). And, Petteway's request for the court to order DOC officials to provide him with a "lifetime 'single cell' status in any prison facility he may be confined in" seeks a relief extending well beyond what is necessary to remedy any ongoing Eighth Amendment violation occurring at Corrigan. Accordingly, I deny Petteway's motion for preliminary injunction, ECF No. 27, without prejudice.

However, Petteway may proceed against Corrigan Warden Perez and Dr. Garnea in their official capacities because his Complaint suggests he may be subject to ongoing Eighth Amendment deliberate indifference to his mental health need for a single cell.

## IV. CONCLUSION AND ORDERS

For the foregoing reasons, I conclude as follows:

(1) Petteway may PROCEED for damages on his Eighth Amendment claims against former Warden Daniel Dougherty, Deputy Warden/Warden Brian Perez, Lieutenant Fulton, and Dr. Garnea in their individual capacities for deliberate indifference to his mental health needs for a single cell.

(2) Petteway may PROCEED for official capacity relief on his Eighth Amendment claims against Warden Brian Perez and Dr. Garnea for deliberate indifference to his mental health needs for a single cell.

(3) All other claims are SEVERED and DISMISSED without prejudice under Federal Rule of Civil Procedure 21. Petteway may pursue such claims in separate actions.

(4) The clerk is instructed to terminate Correctional Officer David Say, Lieutenant Hacket, Dr. Brone, Dr. Rayder, Counselor Supervisor Larissa Kelly, Counselor Supervisor

Kerwin, Correctional Officer Aponte, Lieutenant Pearsons, Lieutenant Thibodeau, and Correctional Officer Mawr-Edmunds defendants in this action.

**Petteway has two options as to how to proceed in response to this Initial Review Order:**

If Petteway wishes to proceed immediately **only** on the claims against Warden Daniel Dougherty, Deputy Warden/Warden Brian Perez, Lieutenant Fulton, and Dr. Garnea in their individual capacities as set forth in paragraph one, and the claims against Warden Brian Perez and Dr. Garnea in their official capacities as set forth in paragraph two, he may do so without further delay. If Petteway selects this option, he shall file a notice on the docket on or before November 26, 2026, informing the court that he elects to proceed with service as to the claims set forth in paragraphs one and two. The court will then begin the effort to serve process in the capacity described above.

Alternatively, if Petteway wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an amended complaint on or before **November 26, 2026**. An amended complaint, if filed, will completely replace the original complaint, and the court will not consider any allegations made in the original complaint in evaluating any amended complaint. The court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Petteway elects to file an amended complaint, the complaint addressed by this Initial Review Order will **not** proceed to service of process on any defendant.

If the court receives no response from Petteway before **November 26, 2026**, the court will presume that Petteway wishes to proceed on the original complaint as to the claims

permitted to go forward in this Initial Review Order, and he will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Changes of Address**. If Petteway changes his address at any time during the litigation of this case, Local Rule 83.1(c) provides that he **MUST** notify the court. Failure to do so may result in the dismissal of the case. He must give notice of a new address even if he is incarcerated. Petteway should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Petteway has more than one pending case, he should indicate all the case numbers in the notification of change of address. Petteway should also notify Defendants or counsel for Defendants of his new address.

**SO ORDERED.**

New Haven, Connecticut
October 26, 2026

/s/Sarah F. Russell
SARAH F. RUSSELL
United States District Judge